# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS CONCERNING FORMER PRESIDENT TRUMP'S COMMUNICATIONS WITH HIS ATTORNEYS | Case: 1:23−mc−00065<br>Assigned To : Boasberg, James E.<br>Assign. Date : 6/26/2023<br>Description: Misc.<br><br>Case No. _____<br><br>Chief Judge James E. Boasberg<br><br>Hearing Requested |

### PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS CONCERNING FORMER PRESIDENT TRUMP'S COMMUNICATIONS WITH HIS ATTORNEYS

Pursuant to Local Criminal Rules 57.6 and 6.1, Applicants Cable News Network, Inc., The New York Times Company, and WP Company LLC d/b/a The Washington Post respectfully move for access to certain judicial records ancillary to the grand jury investigation into Donald J. Trump's handling of classified materials after leaving the White House, which has resulted in the first federal criminal charges ever brought against a former President. The subject matter of these ancillary judicial records has now been made public in the prosecution of Trump pending in the United States District Court for the Southern District of Florida. *See* Indictment, *United States v. Trump*, No. 23-cr-80101-AMC (S.D. Fla. June 8, 2023), ECF No. 3 (the "Indictment").

Applicants specifically seek access to judicial records concerning any claim of attorney-client privilege or attorney work product protection asserted as to communications between Trump and his attorneys, including the attorneys directly referenced in the Indictment. The Indictment describes and quotes from communications between Trump and two of his attorneys, including several statements that one of those attorneys – who the Government has identified as Evan Corcoran – subsequently "memorialized." The Government undoubtedly obtained information about Trump's communications with his attorneys, which ordinarily would have



RECEIVED
JUN 26 2023
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

enjoyed protection under the attorney-client privilege, following an adjudication by this Court that the Government had overcome Trump's putative privilege. With the Indictment now unsealed, and directly quoting the former President's communications with his criminal lawyers, the public is entitled to the record behind any ancillary litigation of the privilege issue.

While Federal Rule of Criminal Procedure 6(e) ordinarily restricts disclosure of "a matter occurring before the grand jury," and Local Criminal Rule 6.1 provides for the filing under seal of motions, papers, and orders prepared "in connection with a grand jury subpoena or other matter occurring before a grand jury," the same Local Rule also provides that such proceedings "may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury." In fact, "[o]nce such a finding has been made, the Circuit has instructed that 'where the Rules authorize [courts] to do so, [courts] may – and should – release any information so long as it does not reveal' material that Rule 6(e)(6) protects." *In re Press Appl. for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence*, --- F. Supp. 3d ---, 2023 WL 3931384, at *3 (D.D.C. June 9, 2023) (emphasis District Court's) (quoting *In re Grand Jury Subpoena*, No. 18-3071, Order at 1 (D.C. Cir. Apr. 23, 2019)).

Here, because the Indictment disclosed that the Government obtained communications between Trump and his attorneys, and even recounts those communications in granular detail, continued secrecy over any adjudication of attorney-client privilege or attorney work product protection as to those communications is not necessary to prevent disclosure of matters occurring before the grand jury. *Cf. In re Grand Jury Investigation*, No. 17-mc-2336-BAH, 2017 WL 4898143, at *1 (D.D.C. Oct. 2, 2017) (redacted opinion, released following the indictment of Trump's former campaign manager Paul Manafort, granting Special Counsel's motion to compel

grand jury testimony of Manafort's attorney). The Court should therefore provide access to these judicial records – including briefing on any motion to compel or quash addressing a claim of attorney-client privilege over Trump's communications with his counsel, the transcript of any related hearing, and the resulting opinion and order – with only those narrow redactions necessary to shield whatever factual material, if any, might still require protection from disclosure under Federal Rule 6(e) and Local Rule 6.1.

For the reasons set forth more fully in the accompanying Memorandum of Points and Authorities, Applicants respectfully request that the Court grant this application and unseal the requested materials. Applicants also respectfully request a hearing on this application, and given the D.C. Circuit's recognition of "the critical importance of *contemporaneous* access to [judicial records] to the public's role as overseer of the criminal justice process," *see Washington Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991), Applicants further request that the Court address this application in an expedited manner.

Dated:  June 26, 2023

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
Lauren Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
bowmanchad@ballardspahr.com
russelll@ballardspahr.com

*Counsel for Cable News Network, Inc.,
The New York Times Company, and
WP Company LLC d/b/a The Washington Post*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS CONCERNING FORMER PRESIDENT TRUMP'S COMMUNICATIONS WITH HIS ATTORNEYS | Case No. _____ <br><br> Chief Judge James E. Boasberg <br><br> Hearing Requested |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS
ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS CONCERNING
<u>FORMER PRESIDENT TRUMP'S COMMUNICATIONS WITH HIS ATTORNEYS</u>**

BALLARD SPAHR LLP

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
bowmanchad@ballardspahr.com
russelll@ballardspahr.com

*Counsel for Cable News Network, Inc.,
The New York Times Company, and
WP Company LLC d/b/a The Washington Post*

**PRELIMINARY STATEMENT**

In this application, Cable News Network, Inc., The New York Times Company, and WP Company LLC d/b/a The Washington Post seek access to judicial records that will shed light on the extraordinary circumstances that led the Court to order the disclosure of former President Trump's communications with his criminal lawyers. In the unprecedented federal indictment of a former President, the Special Counsel's Office has copiously quoted and made reference to these communications – ordinarily protected by attorney-client privilege – in outlining Trump's interactions with two of his attorneys: Evan Corcoran, referred to in the indictment as "Trump Attorney 1," and another attorney referred to as "Trump Attorney 2."[1] *See* Indictment, *United States v. Trump*, No. 23-cr-80101-AMC (S.D. Fla. June 8, 2023), ECF No. 3 (the "Indictment").

The fact that the attorney-client privilege claim was litigated in this Court is hardly secret. Trump acknowledged through a spokesperson several months ago that he objected to and opposed the Government's efforts to obtain his communications with counsel. *See* Josh Dawsey et al., *Judge rules Trump lawyer Corcoran must testify, people familiar say*, The Washington Post (Mar. 17, 2023), https://www.washingtonpost.com/national-security/2023/03/17/trump-corcoran-crime-fraud-howell/ ("Every American has the right to consult with counsel and have candid discussions – this promotes adherence to the law. We will fight the Department of Justice on this front and all others that jeopardize fundamental American rights and values."). Now, by extensively quoting from and discussing Trump's communications with Corcoran and Attorney 2

---

[1] The Government has revealed that Attorney 1 is Evan Corcoran. *See* Indictment ¶ 52 (stating that Trump "authorized Trump Attorney 1 to accept service" of the May 11, 2022 grand jury subpoena); Att. D to United States' Resp. to Mot. for Jud. Oversight & Additional Relief, *Trump v. United States*, No. 22-cv-81294-AMC (S.D. Fla. Aug. 30, 2022), ECF No. 48-1 at 14 (May 11, 2022 letter from Department of Justice attorney Jay Bratt thanking Corcoran "for agreeing to accept service of the grand jury subpoena").

throughout the Indictment, the Government has officially disclosed that it acquired them. *See* Indictment ¶¶ 52-56, 59, 65-66, 81(a), 81(c), 83. The public, however, has been left in the dark as to how the Government could have successfully obtained those records given the customarily robust protections of attorney-client privilege and/or the attorney work product doctrine.[2] Under these circumstances, and in light of the colossal public interest in the unprecedented federal prosecution of a former President of the United States, there is no reason to keep these judicial records secret.

Quite the contrary, there is ample reason to unseal these records. Forbidding the press and public from seeing for themselves the decision the Court reached and the records the Court relied on violates "a fundamental norm of our judicial system: that judges' decisions and their rationales must be available to the public." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 675 (D.C. Cir. 2017) (Garland, J.). As this Court recently observed in releasing similar records concerning former Vice President Pence's novel assertion of speech-and-debate privilege in proceedings ancillary to another grand jury investigation of the former president, "disclosure will permit the public to see (in part) what informed [the] reasoning behind the Court's resolution" of a dispute between the Department of Justice and its former (and potentially future) chief executive. *In re Press Appl. for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence*, --- F. Supp. 3d ---, 2023 WL 3931384, at *6 (D.D.C. June 9, 2023) ("*In re Pence*") (citations and internal marks omitted).

This Court has discretion under Local Criminal Rule 6.1 to unseal the requested records "upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring

---

[2] Though attorney-client privilege and attorney work product protection are distinct concepts, for the sake of efficiency Applicants will use the term "attorney-client privilege" throughout this memorandum to refer to both doctrines.

2

before the grand jury." L. Crim. R. 6.1.  And "[o]nce such a finding has been made, the Circuit has instructed that 'where the Rules authorize [courts] to do so, [courts] may – and <u>should</u> – release any information so long as it does not reveal' material that Rule 6(e)(6) protects." *In re Pence*, 2023 WL 3931384, at *3 (emphasis District Court's) (quoting *In re Grand Jury Subpoena*, No. 18-3071, Order at 1 (D.C. Cir. Apr. 23, 2019)).  Because narrow redactions can adequately address any concerns the Government may raise about revealing any Rule 6(e)(6) information in these judicial records, as was the case with the *In re Pence* records, the Court should grant this application and unseal the records adjudicating any claim of attorney-client privilege asserted over communications between Trump and his attorneys, including but not limited to Corcoran and Attorney 2.

## RELEVANT PUBLIC BACKGROUND

**I.      The Search for Classified Materials at Mar-a-Lago**

As the Eleventh Circuit has recounted, "in January 2021, movers transferred documents from the White House to [Trump's] personal residence, a South Florida resort and club known as Mar-a-Lago.  Over the course of that year and into the next, and consistent with its responsibilities under the Presidential Records Act, the National Archives and Records Administration sought to obtain missing presidential records that its officials believed were in Plaintiff's possession." *Trump v. United States*, 54 F.4th 689, 694 (11th Cir. 2022) (citation omitted).  "In January 2022, after months of discussions, [Trump] transferred fifteen boxes of documents to the National Archives.  Inside were newspapers, magazines, printed news articles, photos, miscellaneous print-outs, notes, presidential correspondence, personal and post-presidential records, and a lot of classified records." *Id.* (citation and internal marks omitted).  When the FBI reviewed these records in May 2022, "[i]t found 184 documents marked at varying levels of classification, including twenty-five marked top secret." *Id.* at 694-95.

3

After having "developed evidence that even more classified information likely remained at [Trump's] residence," the Justice Department "obtained a grand-jury subpoena for all documents or writings bearing classification markings that were in [Trump's] custody or control, and [Trump's] counsel was served with the subpoena in early May." *Id.* at 695. Pursuant to that subpoena (the "May 11 Subpoena"), Trump made a production to the Government that "contained thirty-eight classified documents, seventeen of which were marked top secret." *Id.*

Though "[a] declaration accompanying the documents certified that a 'diligent search was conducted' of the boxes moved from the White House and that '[a]ny and all responsive documents' had now been produced," federal investigators "developed more evidence that other classified documents remained at Mar-a-Lago." *Id.* The Justice Department therefore "sought a search warrant" and "presented an FBI agent's sworn affidavit" in the U.S. District Court for the Southern District of Florida to Magistrate Judge Bruce E. Reinhart, "who agreed that probable cause existed to believe that evidence of criminal violations would likely be found at Mar-a-Lago." *Id.* Magistrate Judge Reinhart thus "issued a search warrant for the offices, storage rooms, and potential storage sites at [Trump's] residence, and authorized the seizure of . . . physical documents and records constituting evidence, contraband, fruits of crime, or other items illegally possessed in violation of," *inter alia*, 18 U.S.C. §§ 793 and 1519, two of the statutes under which Trump is now charged. *Id.*

On August 8, 2022, FBI agents executed the search warrant at Mar-a-Lago, where they "seized approximately 13,000 documents and a number of other items, totaling more than 22,000 pages of material." *Id.* "[F]ifteen of the thirty-three seized boxes, containers, or groups of papers contained documents with classification markings, including three such documents found

4

in desks in [Trump's] office. All told, the search uncovered over one hundred documents marked confidential, secret, or top secret." *Id.*

## II. The Unsealed Search Warrant Affidavit

On August 10, 2022, the press began filing motions to unseal the Mar-a-Lago search warrant and the application materials the Government submitted to obtain it. *See In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1260 (S.D. Fla. 2022). Over the Government's objections, Magistrate Judge Reinhart granted those motions to unseal in part, explaining that "[i]t is a foundational principle of American law that judicial proceedings should be open to the public" and noting "the intense public and historical interest in an unprecedented search of a former President's residence." *Id.* at 1260, 1265.

Also in August 2022, Trump "filed a new action in the United States District Court for the Southern District of Florida," in which he sought, among other relief, appointment of a "special master." *Trump*, 54 F.4th at 696. As a result of that lawsuit, which was ultimately dismissed, the public learned extensive details about the search of Mar-a-Lago and the underlying investigation into Trump's retention of classified materials after leaving office. *See generally* United States' Resp. to Mot. for Jud. Oversight & Additional Relief, *Trump v. United States*, No. 22-cv-81294-AMC (S.D. Fla. Aug. 30, 2022) (ECF No. 48).

## III. The Special Counsel Investigation

In November 2022, U.S. Attorney General Merrick Garland announced the appointment of Jack Smith as Special Counsel to oversee two ongoing criminal investigations into Trump, including one concerning "classified documents and other presidential records, as well as the possible obstruction of that investigation." *See* Order No. 5559-2022, Dep't of Justice (Nov. 18, 2022), https://www.justice.gov/opa/press-release/file/1552896/download.

5

## IV. The Indictment

On the evening of June 8, 2023, Trump published a series of messages online stating that "[t]he corrupt Biden Administration has informed my attorneys that I have been Indicted, seemingly over the Boxes Hoax," which appears to be Trump's way of referring to the federal investigation into his retention of classified materials after leaving office.[3] The next day, the U.S. District Court for the Southern District of Florida unsealed the Indictment, revealing that the Government had obtained communications between Trump and at least two of his counsel, Corcoran and Attorney 2, including communications that Corcoran had "memorialized." *See* Indictment ¶¶ 54, 55, 66. Those communications include Trump asking Corcoran, in discussing how to respond to the May 11 Subpoena, "Wouldn't it be better if we just told them we don't have anything here?" *See* Indictment ¶ 54(c). They also include Trump asking Corcoran, after Corcoran had reviewed boxes in a Mar-a-Lago storage room and collected documents with classification markings, "[W]hy don't you take them with you to your hotel room and if there's anything really bad in there, like, you know, pluck it out[?]" *See id.* ¶ 66.

Based in part on these communications, the Indictment charges that Trump engaged in a conspiracy "to keep classified documents he had taken with him from the White House and to hide and conceal them from a federal grand jury" by, *inter alia*, "[s]uggesting that [Corcoran] falsely represent to the FBI and grand jury that TRUMP did not have documents called for by the May 11 Subpoena," and "suggesting that [Corcoran] hide or destroy documents called for by the May 11 Subpoena." *See id.* ¶¶ 80-81.

All told, the Indictment charges Trump with 31 counts of Willful Retention of National Defense Information in violation of 18 U.S.C. § 793(e), one count of Conspiracy to Obstruct

---

[3] *See* https://truthsocial.com/@realDonaldTrump/posts/110511161624038678.

Justice in violation of 18 U.S.C. § 1512(k), one count of Withholding a Document or Record in violation of 18 U.S.C. §§ 1512(b)(2)(A) & 2, one count of Corruptly Concealing a Document or Record in violation of 18 U.S.C. §§ 1512(c)(1) & 2, one count of Concealing a Document in a Federal Investigation in violation of 18 U.S.C. §§ 1519 & 2, one count of engaging in a Scheme to Conceal in violation of 18 U.S.C. §§ 1001(a)(1) & 2, and one count of making False Statements and Representations in violation of 18 U.S.C. §§ 1001(a)(2) & 2. *See id.* ¶¶ 76-92.

On June 13, 2023, Trump was arrested and arraigned in the Southern District of Florida and pleaded not guilty to all of the charges against him. *See* Minute Order, *United States v. Trump*, ECF 16. Trump was released on his own recognizance and is currently scheduled to stand trial in August 2023. *See* Personal Recognizance Bond, *United States v. Trump*, ECF 17; Omnibus Order at 1, *United States v. Trump*, ECF 28.

## ARGUMENT

The public has an enormous and pressing interest in learning how the Government obtained the communications between Trump and his attorneys at issue in the Indictment. Trump's communications with his counsel now form a key set of the facts on which he will stand trial in these historic proceedings. Moreover, the legal basis for this Court's decision to overcome the former President's privilege in communicating with his legal counsel also warrants transparency. For well over a century, the Supreme Court has recognized that attorney-client privilege advances "the interest and administration of justice" by facilitating "the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888); *accord Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.").

7

The legal grounds on which this Court overruled Trump's putative privilege are as crucial as the facts that the Government has alleged against him.

And this is no ordinary case in which the courts have confronted such a privilege issue. The defendant here is a former President and current presidential candidate who claims he is the victim of a "witch hunt" led by his political rival, the sitting President of the United States.  This unique and historic set of facts, perhaps more than ever before, calls to mind the Supreme Court's admonition that "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980).

Fortunately, in these circumstances the Federal Rules do not prohibit the public from seeing these judicial records for themselves.  Because this is a matter ancillary to a grand jury proceeding, the need and justification for sealing extends only to those discrete portions of the record that would reveal remaining secrets about "matters occurring before the grand jury."  The Court therefore can, and should, unseal the requested records with only those redactions essential to protect the information, if any, that still remains secret before the grand jury.

I. **THE COURT HAS DISCRETION UNDER LOCAL RULE 6.1 TO UNSEAL INFORMATION IN ANCILLARY PROCEEDINGS THAT WOULD NOT REVEAL ACTIVITIES "OCCURRING BEFORE THE GRAND JURY"**

As this Court recently explained, when "the grand jury's business calls for 'judicial proceedings relating to,' but 'at arm's length' from, that body, including resolving a grand-jury witness's 'motion to . . . quash [a] subpoena' or her invocation 'of a testimonial privilege,'" the records of "such proceedings ancillary to the grand jury's work are not themselves subject to grand-jury secrecy but are governed by Rule 6(e)(6), which requires that '[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury.'" *In*

8

*re Pence*, 2023 WL 3931384, at *3 (quoting *In re Motions of Dow Jones & Co.* (*Dow Jones I*), 142 F.3d 496, 498 (D.C. Cir. 1998)).  Rule 6 thus empowers courts to release records of ancillary proceedings "once sealing them is no longer 'necessary' to protect grand-jury secrets."  *Id.*

Local Criminal Rule 6.1 further "set[s] out a mechanism for releasing documents in ancillary proceedings," as it "provides that '[p]apers, orders and transcripts of hearings' in proceedings ancillary to the grand jury 'or portions thereof[ ] may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury.'"  *Id.*  And "[o]nce such a finding has been made, the Circuit has instructed that 'where the Rules authorize [courts] to do so, [courts] may – and <u>should</u> – release any information so long as it does not reveal' material that Rule 6(e)(6) protects."  *Id.* (emphasis District Court's) (quoting *In re Grand Jury Subpoena*, No. 18-3071, Order at 1 (D.C. Cir. Apr. 23, 2019)).

The Court can advance that interest in access even further by "'redact[ing] documents'" wherever possible to facilitate their "public release" rather than by withholding them in full.  *Id.* (quoting *Dow Jones I*, 142 F.3d at 501).  Indeed, this Court did precisely that in releasing redacted court records pertaining to former Vice President Pence's assertion of speech-and-debate privilege.  *See id.* at *7 ("Responding to that narrow request with appropriate redactions may fill legal gaps about the Court's reasoning, not factual gaps about how the grand jury's investigation is proceeding.").  Then-Chief Judge Howell did the same in releasing a redacted opinion adjudicating a claim of attorney-client privilege over communications between Trump's former campaign manager Paul Manafort and his counsel.  *See In re Grand Jury Investigation*, No. 17-mc-2336-BAH, 2017 WL 4898143 (D.D.C. Oct. 2, 2017) (released with redactions after Manafort's indictment).

9

## II. THE COURT SHOULD EXERCISE ITS DISCRETION TO UNSEAL JUDICIAL RECORDS THAT DO NOT REVEAL SECRET GRAND JURY INFORMATION

Where, as here, "a party invokes the Local Rule to request materials ancillary to grand-jury proceedings, the district court is to 'duly consider the request' and 'if it denies the request, offer some explanation.'" *In re Pence*, 2023 WL 3931384, at *6 (quoting *In re Sealed Case (Dow Jones II)*, 199 F.3d 522, 523 (D.C. Cir. 2000)). "In asking whether redacted documents should be released, courts typically assess various discretionary considerations," *see id.*, including what the public will learn from the disclosure. *See, e.g.*, *In re Grand Jury Proceedings (Miller)*, 438 F.3d 1138, 1140 (D.C. Cir.) ("If the public is to see our reasoning, it should also see what informed that reasoning."). Those considerations support unsealing these court records.

In light of the powerful public interest in this dispute between the current Executive Branch and the former president, the central role that communications between Trump and his attorneys play in the historic charges Trump is currently facing, and the extensive amount of information about those communications already disclosed in the Indictment, the public would greatly benefit from understanding the arguments made for and against obtaining those communications, this Court's process of adjudicating that dispute, and the decision this Court reached. Release of the requested records, even with the narrow redaction of any Rule 6(e) information that would disclose still-secret details about proceedings before the grand jury, would thus shed much needed light on this ancillary matter and the important issues it raises.

## CONCLUSION

For all of the foregoing reasons, Applicants respectfully requests that this Court unseal redacted public versions of any court orders or opinions, legal briefing, or argument transcripts addressing any claim of privilege asserted over communications between Trump his attorneys, including but not limited to Corcoran and Attorney 2.

10

Dated:  June 26, 2023               Respectfully submitted,

                                    BALLARD SPAHR LLP

                                    /s/ *Charles D. Tobin*
                                    Charles D. Tobin (#455593)
                                    Maxwell S. Mishkin (#1031356)
                                    Chad R. Bowman (#484150)
                                    Lauren Russell (#1697195)
                                    1909 K Street, NW, 12th Floor
                                    Washington, DC 20006
                                    Tel: (202) 661-2200
                                    Fax: (202) 661-2299
                                    tobinc@ballardspahr.com
                                    mishkinm@ballardspahr.com
                                    bowmanchad@ballardspahr.com
                                    russelll@ballardspahr.com

                                    *Counsel for Cable News Network, Inc.,*
                                    *The New York Times Company, and*
                                    *WP Company LLC d/b/a The Washington Post*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June 2023, I caused true and correct copies of the foregoing to be served by email and U.S. Mail First Class on the following:

| | |
|---|---|
| Christopher Michael Kise<br>Chris Kise & Associates, P.A.<br>201 East Park Avenue, 5th Floor<br>Tallahassee, FL 32301<br>chris@ckise.net<br><br>Todd Blanche<br>Blanche Law<br>99 Wall Street, Suite 4460<br>New York, NY 10005<br>toddblanche@blanchelaw.com<br><br>*Attorneys for Donald J. Trump* | Jay I. Bratt<br>Julie A. Edelstein<br>Brett C. Reynolds<br>National Security Division<br>Department of Justice<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530<br>JIB@usdoj.gov<br>JAE@usdoj.gov<br>BCR@usdoj.gov<br><br>*Attorneys for the United States of America* |

/s/ *Charles D. Tobin*
Charles D. Tobin