**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE PRESS APPLICATION FOR ACCESS TO JUDICIAL RECORDS ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS CONCERNING FORMER PRESIDENT TRUMP'S COMMUNICATIONS WITH HIS ATTORNEYS** | **Misc. No. 23-65 (JEB)** |

<u>**MEMORANDUM OPINION**</u>

The legal news cycle has seen lazier summers.  In one of many noteworthy events, a federal grand jury indicted former president Donald J. Trump this June for retaining and concealing classified documents after the conclusion of his presidential term.  Reporters have since been hard at work, setting vacation plans aside to wade through the lengthy indictment.  Having observed that the indictment contains detailed accounts of Trump's discussions with his attorneys (which are normally protected by the attorney-client privilege), a set of news organizations now asks this Court to disclose how the Government obtained them.  Because any such disclosure would infringe on grand-jury secrecy, however, the Court must deny the request.

**I.     Background**

In November 2022, Attorney General Merrick B. Garland appointed Jack Smith as Special Counsel to investigate Trump for allegedly moving classified documents out of Government hands and to the Mar-a-Lago Club in Palm Beach, Florida.  <u>See</u> Press Release, Dep't of Justice, Appointment of Special Counsel (Nov. 18, 2022), https://perma.cc/G5K2-ZN7T; <u>Trump v. United States</u>, 54 F.4th 689, 694–96 (11th Cir. 2022) (describing Government's discovery of "over one hundred documents marked confidential, secret, or top secret" that Trump

had not produced in response to a subpoena).  That appointment led to a grand-jury investigation, which in turn resulted in an indictment.

    A.  <u>March Reports of Grand-Jury Testimony</u>

    In March 2023, some news outlets cited unidentified sources to report that "[a] federal judge ha[d] at least partially granted a request from [Government] prosecutors to force an attorney for Donald Trump to testify before a grand jury" after "[t]he lawyer, Evan Corcoran, had refused to answer investigators' questions[,] . . . invoking attorney-client privilege."  Josh Dawsey, *et al.*, <u>Judge Rules Trump Lawyer Corcoran Must Testify, People Familiar Say</u>, Wash. Post (Mar. 17, 2023), https://perma.cc/64SE-SFRA; <u>see also</u> Katherine Faulders, *et al.*, <u>Sources: Special Counsel Claims Trump deliberately Misled His Attorneys About Classified Documents, Judge Wrote</u>, ABC News (Mar. 21, 2023), https://perma.cc/T8YR-P3AE (describing what "a top federal judge wrote Friday in a sealed filing, according to sources who described its contents to ABC News").

    Both Corcoran and the Special Counsel declined requests for comment.  <u>See</u> Faulders, *et al.*, *supra*; Dawsey, *et al.*, *supra*.  Trump, meanwhile, stated through a spokesperson that "[w]henever prosecutors target the attorneys, that's usually a good indication their underlying case is very weak," that "[e]very American has the right to consult with counsel," and that he would "fight the Department of Justice on this front and all others that jeopardize fundamental American rights and values."  Dawsey, *et al.*, *supra*.  He also described the reports as unlawful leaks.  <u>See</u> Faulders, *et al.*, *supra* ("In response to ABC News, a Trump campaign spokesperson said, in part, 'Shame on Fake News ABC for broadcasting ILLEGALLY LEAKED false allegations from a Never Trump, now former chief judge[.] . . . The real story here, that Fake

News ABC SHOULD be reporting on, is that prosecutors only attack lawyers when they have no case . . . .'").

    B.  <u>June Indictment</u>

Within a few months of those March reports, a grand jury empaneled in the Southern District of Florida returned a 37-count indictment against Trump related to his and a co-conspirator's retention of, sharing of, and obstruction of efforts to retrieve classified documents. <u>See</u> <u>United States v. Trump</u>, No. 23-80101 (S.D. Fla. June 8, 2023), ECF No. 3 (Indictment), ¶¶ 7, 46–47.  The indictment details Trump's interactions with three unnamed attorneys, identified only as Trump Attorneys 1, 2, and 3, through whom Trump sought to "falsely represent to the FBI and grand jury" that he "did not have the [classified] documents called for" by a subpoena and attempted to "hide or destroy" them instead of handing them over.  <u>Id.</u>, ¶¶ 52, 55, 68, 80–81.  The indictment also summarizes conversations Trump had with his attorneys "as memorialized by [] Attorney 1."  <u>Id.</u>, ¶ 54.

Attorney 1, the Press conjectures, is Corcoran.  It so believes because back in 2022, the Government filed a brief in the Southern District of Florida to defend its execution of a Mar-a-Lago search warrant and attached to that brief a document identifying Corcoran as having accepted service just as the indictment states Attorney 1 did.  <u>See id.</u>, ¶ 52; ECF No. 1 (Mem. in Support of Press App.) at 1 n.1 (citing <u>Trump v. United States</u>, No. 22-81294 (S.D. Fla. Aug. 30, 2022), ECF No. 48-1 (Att. D to Government's Resp. to Mot. for Jud. Oversight) at 14).

    C.  <u>The Press's Application</u>

Matching the March reports of Corcoran's privilege dispute up with the indictment's description of Trump's communications with his attorneys, a Press Coalition comprising CNN, the New York Times, and the Washington Post has concluded that "[t]he Government

undoubtedly obtained information about Trump's communications with his attorneys, which ordinarily would have enjoyed protection under the attorney-client privilege, following an adjudication by this Court that the Government had overcome Trump's putative privilege." ECF No. 1 (Press App. for Access to Judicial Records) at 1–2. That Coalition now moves to access "judicial records concerning any claim of attorney-client privilege or attorney work product protection asserted as to communications between Trump and his attorneys," with "only those narrow redactions necessary to shield whatever factual material, if any, might still require protection from disclosure." Id. at 1, 3.

Because the Chief Judge must "hear and determine all matters relating to proceedings before the grand jury," the Press's Application was assigned to this Court. See LCvR 40.7(b). The Government moved to file its Opposition under seal, see ECF No. 5 (Mot. for Leave to File) at 1 n.1, which the Court granted with the caveat that it could later order the Government to file a redacted version of its Opposition on the public docket. See Minute Order of Aug. 2, 2023. Although the Opposition remains sealed, the Court cites portions in this Opinion that divulge no protected grand-jury material.

## II.    Legal Framework

### A.  Grand-Jury Secrecy

In general, "the grand jury context presents an unusual setting where privacy and secrecy are the norm." In re Grand Subpoena, Judith Miller, 438 F.3d 1141, 1150 (D.C. Cir. 2006) (quoting In re Sealed Case (Dow Jones II), 199 F.3d 522, 526 (D.C. Cir. 2000)). Witnesses "enter the grand jury room alone . . . .  No judge presides and none is present." In re Motions of Dow Jones & Co. (Dow Jones I), 142 F.3d 496, 498 (D.C. Cir. 1998). Access to grand-jury materials turns on Federal Rule of Criminal Procedure 6(e)(2), which dictates that "[o]ther than

witnesses, each person present . . . is forbidden from disclosing 'matters occurring before the grand jury.'" Id. (quoting Fed. R. Crim. P. 6(e)(2), 6(e)(3)(A)(ii)); see also In re Sealed Case No. 99-3091, 192 F.3d 995, 1002 (D.C. Cir. 1999).  In this Circuit, courts, too, lack any "inherent authority" to release matters occurring before the grand jury.  McKeever v. Barr, 920 F.3d 842, 844, 850 (D.C. Cir. 2019).  This arrangement "safeguards vital interests," including "(1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation who might otherwise flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated." Id. at 844 (citing Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 219 (1979)).

B.   Accessing Ancillary Proceedings

The grand jury's business may also call for "judicial proceedings relating to," but "at arm's length" from, that body, including to resolve a grand-jury witness's "motion to . . . quash [a] subpoena" or her invocation "of a testimonial privilege."  Dow Jones I, 142 F.3d at 498. Records of such proceedings ancillary to the grand jury's work are not themselves subject to grand-jury secrecy but are governed by Rule 6(e)(6), which requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." (Emphasis added.)  Although Rule 6(e)(6) displaces any First Amendment or common-law right of access to documents in ancillary proceedings, see Dow Jones I, 142 F.3d at 500–04, the Rule allows for their release once sealing them is no longer "necessary" to protect grand-jury secrets.

In assessing the extent of such necessity, the Circuit has explained that Rule 6(e)(6)'s reference to "a matter occurring before a grand jury" protects "not only what has occurred and what is occurring, but also what is likely to occur" before that body.  Id. at 500.  The Rule

5

therefore protects information in ancillary documents that reveals "'the identities of witnesses or jurors, the substance of testimony' as well as actual transcripts, 'the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'" Id. (quoting SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980)).  Rule 6(e)(6) protection certainly "does not create a type of secrecy which is waived" as soon as "public disclosure occurs," but once "information is sufficiently widely known[,] . . . it has lost its character as Rule 6(e) material." Id. at 505 (quoting In re North, 16 F.3d 1234, 1245 (D.C. Cir. 1994)).  The Rule's secrecy requirements therefore yield only "when there is no secrecy left to protect."  In re Grand Jury Subpoena, Judith Miller (Miller II), 493 F.3d 152, 154 (D.C. Cir. 2007) (citation omitted).

    As the Government acknowledges, courts have found the protection to yield in two circumstances.  See ECF No. 5-1 (Gov't Opp.) at 10–11; In re Press Application for Access to Jud. Recs. & Procs., Misc. No. 22-128, 2023 U.S. Dist. LEXIS 104648, at *4 (D.D.C. Mar. 11, 2023).  The first and most common occurs where a grand-jury witness has herself disclosed facts surrounding her own grand-jury testimony.  See Dow Jones I, 142 F.3d at 497–99, 505 (holding court could not deny request for ancillary documents on sole ground that disclosure would reveal identity of subpoenaed witness where witness's attorney had already "proclaimed from the rooftops that his client had been subpoenaed"); In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence, Misc. No. 23-35, 2023 WL 3931384, at *4 (D.D.C. June 9, 2023) (disclosing records concerning grand-jury witness's privilege dispute where his own "public statements disclose[d]" the existence and resolution of the dispute).

    Second, disclosure may be permitted where once-protected information has already been disclosed by way of a judicial or other governmental proceeding.  See In re North, 16 F.3d 1234,

1244–45 (D.C. Cir. 1994) (permitting disclosure after prior judicially authorized release of independent-counsel reports revealed certain grand-jury matters) (citing what is now Fed. R. Crim. P. 6(e)(3)(E)(i)); Miller II, 493 F.3d at 154 (releasing "grand jury matters revealed either during the [resulting] trial or by grand jury witnesses themselves").  Once it has been determined that "continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury," Local Criminal Rule 6.1 affords some discretion in how and when to release such records.  See In re Press Application Concerning Pence, 2023 WL 3931384, at *6.

This Court and its predecessor have recently applied these principles to three requests for documents concerning Special Counsel Jack Smith's investigations of Trump.  First, then-Chief Judge Beryl Howell rejected a request for filings and transcripts concerning "Trump's privilege challenge" in a separate grand-jury investigation concerning interference with the certification of the 2020 presidential election results.  In re New York Times Co., Misc. No. 22-100, 2023 WL 2185826, at *1–2 (D.D.C. Feb. 23, 2023).  Judge Howell explained that even partially granting the request would inevitably disclose grand-jury material that retained Rule 6(e)(6) protection because the only public reporting on the existence of any privilege dispute relied on unnamed sources rather than "the type of confirmation by government attorneys, grand jury witnesses, or a privilege holder that the Circuit has found sufficient to make secrecy no longer necessary."  Id. at *14.  Less than a month later, and on the same grounds, she declined a press request for records related to a contempt proceeding against Trump in the same classified-documents investigation at issue here.  See In re Press Application for Access to Jud. Recs. & Procs., 2023 U.S. Dist. LEXIS 104648, at *7 (emphasizing that existence of any contempt proceeding had been disclosed only by "news articles derived from anonymous sources").  Third and most recently, this Court granted in part a request to release records concerning former Vice President Michael

R. Pence's constitutional challenge to a grand-jury subpoena in the election-interference case, after Pence himself "virtually proclaimed from the rooftops" that he had lodged and partially lost such a challenge and would testify before the grand jury.  In re Press Application Concerning Pence, 2023 WL 3931384, at *8 (quoting Dow Jones I, 142 F.3d at 505).  It is against this backdrop that the Court analyzes the current dispute.

## III.   Analysis

This time around, the Press requests documents concerning a privilege dispute that it surmises must have occurred.  It assumes both that Trump and Attorney 1 must have invoked the attorney-client privilege regarding their communications and that Judge Howell must have found that an exception — e.g., crime fraud — vitiated such privilege.  Yet were this Court to release or deny the existence of records relating to such dispute, it would necessarily also confirm or deny whether a witness was indeed called to testify to, and invoked that privilege before, the grand jury.  See Dow Jones I, 142 F.3d at 501 ("[T]he fact that [a witness] was subpoenaed to testify [and] the fact that he invoked the privilege in response to questions . . . would be, according to [the Circuit's] precedent, 'matters occurring before the grand jury.'") (quoting SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980)); In re New York Times Co., 2023 WL 2185826, at *13 ("[M]aterials concerning privileges asserted to withhold testimony are also matters occurring before the grand jury.").

The Press appears to concede this point but maintains that it is "no longer necessary" to keep the existence of any such dispute secret because the media has already reported that Corcoran invoked the privilege and because the indictment contains attorney-client communications.  See Fed. R. Crim. P. 6(e)(6); Mem. at 8–9.  In making this argument, the Press infers that Corcoran declined to testify before the grand jury, that he was compelled to do so, and

that his resulting testimony revealed the communications with Trump that now appear in the indictment.  Each step is rooted in conjecture, and none justifies revealing grand-jury secrets.

The Press walks the Court down the following path.  It starts with the March 2023 reporting as having revealed that Corcoran invoked the attorney-client privilege before the grand jury earlier this year.  See Mem. at 1–2.  The Press then notes that the indictment contains extensive evidence of Attorney 1's communications with Trump, plugs in its inference that Attorney 1 is Corcoran, and concludes that Corcoran must have been made to testify before the grand jury about his conversations with Trump after his attempt to invoke the attorney-client privilege back in March fell flat.  While they make for an interesting trip, these suppositions do not rely on any actual statement by a grand-jury witness or any other formal governmental disclosure.

Begin with media reports that Corcoran invoked the attorney-client privilege before the grand jury.  That account was based on unidentified sources of the same kind that this Court's predecessor has twice explained cannot strip grand-jury material of its Rule 6(e) protection.  See In re New York Times Co., 2023 WL 2185826, at *14 ("Those sources, however, are not the type of confirmation by government attorneys, grand jury witnesses, or a privilege holder that the Circuit has found sufficient to make secrecy no longer necessary.") (citing Dow Jones II, 142 F.3d at 505); In re Press Application for Access to Jud. Recs. & Procs., 2023 U.S. Dist. LEXIS 104648, at *4 ("[P]etitioners' citation to news articles derived from anonymous sources is unpersuasive because, under binding case law, such reporting does not erode grand jury secrecy.") (cleaned up).

Here, as in those cases, both the purported witness and the Government understandably and expressly declined to comment on that reporting.  See Dawsey, et al., supra; Faulders, et al.,

*supra*; In re North, 16 F.3d at 1245 ("[W]hen the media reports information alleged to be grand jury material, 'the government is obligated to stand silent' and not confirm the information, whether it is accurate or not.") (quoting Barry v. United States, 740 F. Supp. 888, 891 (D.D.C. 1990)).  The only identifiable individual who may have had some direct knowledge and who commented on that reporting is Trump, the target of the investigation.  Although statements made by the holder of the privilege could be considered relevant, Trump's statements called the reporting "Fake News" and suggested at most that the grand jury sought to learn what his attorneys knew, not necessarily that it asked for their accounts of their communications with him or that any such effort was successful.  See Faulders, *et al.*, *supra*.; Dawsey, *et al.*, *supra*.  The Court declines to read more into those statements.

Nor has the June Indictment confirmed those anonymous reports.  The Press surmises that the Indictment "undoubtedly" reveals that the Government obtained Attorneys 1 and 2's communications directly from them and over their invocation of the attorney-client privilege, see App. at 1, because it recounts the attorneys' communications with Trump in such detail.  See Mem. at 6.  That may be true, but it is ultimately only one of several plausible inferences that may be drawn from the indictment.  The Government is correct to point out that the indictment "demonstrates only that [it] obtained these communications — not through what means, in what form, or from whom."  Opp. at 14 (listing as alternative possibilities Trump's waiver of the privilege or external sources).  Indeed, the Press's Application underscores that disclosure by this Court would reveal inner workings of the grand jury's process that are not already public.  It emphasizes that the public "has been left in the dark as to how the Government could have successfully obtained" records of these attorneys' communications with Trump "given the customarily robust protections of attorney-client privilege and/or the attorney work product

doctrine."  Mem. at 2; see also id. at 7 (similar).  Revealing the particulars or outcome of any

such dispute would therefore necessarily reveal whether the grand jury sought and ultimately

obtained testimony from particular attorneys and on what basis.

The Press attempts to analogize to two recent releases of records relating to ancillary

grand-jury proceedings, but neither moves the needle.  See Mem. at 9.  The first is Judge

Howell's release of a redacted 2017 opinion requiring Paul Manafort's attorney to testify before

a grand jury despite an attorney-client-privilege claim.  See In re Grand Jury Investigation, Misc.

No. 17-2336, 2017 WL 4898143, at *1 (D.D.C. Oct. 2, 2017).  As the Government explains, the

rationale for that publication decision remains sealed to the public.  See Opp. at 19.  In the one

sentence in its Memorandum devoted to the release of this 2017 opinion, the Press appears to

imply that Judge Howell released that opinion solely because an indictment had been issued

following the grand jury's investigation.  See Mem. at 9.

The argument appears to be that since Judge Howell released a redacted opinion on a

grand-jury witness's attorney-client-privilege dispute after an indictment in that case was issued,

the Court should do the same here.  As Judge Howell's decision to redact parts of that opinion

even after publication of the indictment illustrates, however, see Unsealed Opinions in Sealed

Cases, U.S. District Court for D.C., https://perma.cc/W6PP-7LLJ (last visited Aug. 18, 2023);

id., Memorandum Opinion (Redacted), https://perma.cc/AN5W-BPSS (Oct. 2, 2017), the

publication of an indictment does not automatically vitiate Rule 6(e)'s protections.  This Court

must still assess whether the specific facts disclosed in an indictment render it "no longer

necessary" to protect a particular grand-jury secret.  See Fed. R. Crim. P. 6(e)(6).

In Judith Miller II, for example, the Circuit released only parts of its opinion resolving an

ancillary dispute even after issuance of an indictment, and it then waited to release additional

portions of that opinion until after the criminal trial, in which grand-jury witnesses had revealed the specific secrets implicated in those portions.  See 493 F.3d at 153, 155.  Here, as the indictment leaves undisclosed how the Government obtained information about Trump's communications with his attorneys, revealing the existence of an ancillary privilege dispute would necessarily reveal a still-secret matter before the grand jury.

The Press also cites this Court's recent release of records related to Pence's constitutional challenge to a grand-jury subpoena in the election-interference case.  See In re Press App. Concerning Pence, 2023 WL 3931384, at *6.  There, however, the grand-jury witness had himself revealed the existence and outcome of the ancillary privilege dispute, such that the Court's release of redacted records related to it disclosed only additional legal details about the reasoning it employed.  See id.

The Press finally appeals to what it perceives as this Court's discretion to grant its Application, citing for support to cases applying the First Amendment and the common-law right of access to judicial records.  See Mem. at 2, 8 (citing Metlife, Inc. v. Fin. Stability Oversight Council, 865 F.3d 661, 675 (D.C. Cir. 2017), and Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 572 (1980)).  There is, however, no such "right of access to documents in ancillary proceedings," regardless of how newsworthy and significant such proceedings may be.  In re Press Application Concerning Pence, 2023 WL 3931384, at *3 (citing Dow Jones I, 142 F.3d at 500–04; see also In re New York Times Co., 2023 WL 2185826, at *14 ("Historical significance alone . . . is not enough to disclose grand jury material.").  Rule 6(e) is the lodestar here, and the Court has discretion to supplement, but not to circumvent, its requirements.  See LCrR 6.1 (permitting disclosure only upon "finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury.").

That is for good reason.  As our Circuit has explained, "[T]here is likely to be a chilling effect on what a witness is willing to say to a grand jury" — including whether and how she may invoke a testimonial privilege — "if there is a risk the court will later make the witness's testimony public" based on the revelations of others.  <u>McKeever</u>, 920 F.3d at 849 (citing <u>Douglas Oil</u>, 441 U.S. at 219).  While the Court appreciates the Press's diligent efforts to inform the public of the details surrounding these newsworthy events, it is constrained to neither confirm nor deny the existence of the records the Press seeks at this time.

**IV.    Conclusion**

For the foregoing reasons, the Court will deny the Press's Application.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: <u>August 18, 2023</u>

13